**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PHILLIP ESPARZA, | Case No. 1:15-cv-00748-SKO |
| Plaintiff, | **ORDER RE PLAINTIFF'S APPEAL** |
| v. | |
| CAROLYN W. COLVIN, | |
| Acting Commissioner of Social Security, | |
| Defendant. | |

## I. INTRODUCTION

Plaintiff, Michael Phillip Esparza ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplement Security Income ("SSI") Benefits pursuant to Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 405(g), 1381-83. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II. FACTUAL BACKGROUND

Plaintiff was born on July 20, 1976, and alleges disability beginning on June 1, 2010. (Administrative Record ("AR") 30; 225.) Plaintiff claims he is disabled due to mental retardation, high blood pressure, and obesity. (*See* AR 229.)

Plaintiff received grades in his middle school through high school courses ranging from a single "A" (Exceptionally Good) in seventh grade language arts to "F" (Fail). (AR 286-87; 290

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 7; 9.)

(Plaintiff's cumulative grade point average was 2.087 in middle school, and 1.444 in high school).) Plaintiff passed state proficiency testing in Math, Reading, and Writing. (AR 286-88.) It is unclear whether Plaintiff was enrolled in any special education courses. (*See* AR 287 (noting "RSP" denotes "SP-ED" courses; Plaintiff's coursework generally marked "SDC" denotes "SP DAY CLASS")).

**A.     Relevant Medical Evidence[2]**

On September 24, 2011, Dr. Ekram Michiel, M.D., performed a consultative psychiatric evaluation. (AR 313-15.) Plaintiff told Dr. Michiel that he could not remember the last grade he completed in high school, and that he was fired from his last job as a "security person" in June 2010 due to "gossip against him." (AR 313-14.) Plaintiff reported that he was able to attend to his personal hygiene, shop, cook, and perform household chores "a little bit" and plays video games. (AR 314.) Plaintiff complained of depression and did not report any intellectual impairment.

Dr. Michiel observed that Plaintiff's attention, concentration, fund of knowledge, and ability to perform simple math calculations were all intact; Plaintiff was slightly impaired in his short-term memory and had "unremarkable" immediate recall and long-term memory. (AR 315-16.) Dr. Michiel diagnosed Plaintiff with "adjustment disorder with depressed mood." (AR 315.) Dr. Michiel did not note an intellectual impairment under diagnoses. (AR 315.) Dr. Michiel concluded Plaintiff could maintain attention and concentration to carry out simple job instructions; could relate to and interact with coworkers, supervisors, and the general public; and would be unable to carry out "an extensive variety of technical and/or complex instructions." (AR 315.)

On November 4, 2011, Dr. Lance Portnoff, Ph.D., performed a consultative psychological evaluation. (AR 332-39.) Plaintiff reported mental retardation and stated that he took special education classes in elementary school and high school for learning disabilities. (AR 332.) Plaintiff denied any deficits in his activities of daily living, and reported that he was able to attend to his personal care, prepare his own meals, shop and travel independently, and handle money.

---

[2] Only medical evidence relevant to Plaintiff's appeal -- challenging the ALJ's evaluation of his intellectual functioning -- will be addressed.

(AR 333.)

Dr. Portnoff observed Plaintiff exhibited "suboptimal/non-credible effort on all the tests given to him." (AR 333.) Dr. Portnoff described Plaintiff's behavior as alternatively "defiant/uncooperative" and "passive-aggressive," noting Plaintiff used his middle finger to point at test items. (AR 333-34.) Dr. Portnoff found that Plaintiff had a Full Scale IQ of 50 and had Verbal, Perceptual Reasoning, Working Memory, and Processing Speed scores ranging between 50 and 63 per the Wechsler Adult Intelligence Scale-IV test. (AR 335-36.) Dr. Portnoff, however, described Plaintiff's test performance as "invalid due to poor effort." (AR 339.) Dr. Portnoff additionally found that, because of Plaintiff's "noncredible manner," he could not determine whether Plaintiff "truly has any significant cognitive or emotional disorder underneath his presentation." (AR 339.)

On December 1, 2011, Dr. H. Thomas Unger, M.D., reviewed Plaintiff's records and evaluated Plaintiff's impairments for the State agency. (AR 340-57.) Dr. Unger found Plaintiff had medically determinable impairments of "learning disorder" and "adjustment disorder," but concluded Plaintiff did not meet or medically equal the criteria of a presumptively disabling listed impairment. (AR 340.) Dr. Unger opined Plaintiff did not have significant limitations in social interaction or adaptation; was able to understand and remember simple instructions; and was able to perform simple, routine, and repetitive tasks for at least two-hour periods on a sustained basis. (AR 357.)

On November 21, 2011, during an emergency room visit, Plaintiff's treating emergency physician Dr. Joshua Dubansky, M.D., observed Plaintiff as having the "impression of mild developmental delay," but did not note any difficulties in counseling Plaintiff regarding his diagnosis of chronic lower back pain. (AR 397.) Dr. Dubansky also observed that Plaintiff engaged in "suspected symptom [exaggeration]" during this emergency room visit. (AR 395.) At other treatment visits during this period, Plaintiff's treating physicians counseled him about his diagnoses and treatment program, which included discussions about exercise, smoking cessation, and diet and lifestyle modifications. (*See* AR 392; 410; 427; 450.) None of Plaintiff's physician's reported Plaintiff as experiencing any difficulties in understanding this information. (*Id.*)

**B.     Testimony**

    **1.     Plaintiff's Self-Assessments**

Plaintiff denied experiencing limitations in his memory, concentration, understanding, ability to follow instructions, and ability to complete tasks in an adult function report submitted to the agency. (AR 259.) Plaintiff reported that he was able to attend to his personal care, prepare simple meals, drive, shop, manage his finances, and watch television. (AR 255-58.)

    **2.     Third-Party Assessments**

On February 16, 2011, Plaintiff's mother completed an adult function report and stated that Plaintiff had difficulties with his memory and ability to follow written instructions, was able to follow spoken instructions, and did not have any limitations with his concentration or ability to complete tasks. (AR 241.) Plaintiff's mother reported he was able to attend to his personal care, prepare simple meals, perform laundry, clean his bedroom, use public transportation, drive a car, shop, manage his finances, and play video games on his cell phone and computer. (AR 237-40.)

    **3.     Hearing Testimony**

        **a.     Plaintiff's Testimony at Hearing[3]**

Plaintiff testified he was in special education classes through high school and "most" of his schooling history. (AR 45-46 (testifying he took "RSBP" courses).) Plaintiff testified he left high school after the eleventh grade but had earned a GED. (AR 45.) Plaintiff explained that he was expelled because: "I was, well, I go got -- I take things wrong and I get a little bit violent. I guess I was in special ed so sometimes I get, I have anger issues. Sometimes I take things wrong and I get a little bit violent." (AR 46.)

Plaintiff testified he stopped working on June 1, 2010, because he "started getting physically ill because [he] wasn't able to walk as much as [he] used to because [he] was diagnosed with plantar fasciitis" so it was "getting a lot more harder for [him] to walk and stand like [he]

---

[3] At the January 24, 2013 hearing, Plaintiff was not present and constructively waived his right to appear through his counsel. (AR 53-59.) Plaintiff's counsel testified regarding his assessment of the claim and posed hypotheticals to the VE. (AR 56-59.) The ALJ concluded by issuing a notice to show cause as to whether a supplemental hearing should be held. (AR 59.) At a supplemental hearing on July 16, 2013, Plaintiff appeared and testified before the same ALJ and a vocational expert (AR 27-51), and apologized for missing the first hearing (AR 45).

4

used to." (AR 47.) He cannot work due to problems walking, standing, and sitting for long periods of time. (AR 48-49.) Not being able to work and feeling like he is unable to do "anything" like he used to makes Plaintiff feel depressed. (AR 56.) Plaintiff testified he worked as a security guard for ten to fifteen years and that while were "a lot of different job duties" associated with his security guard positions, he was able to learn how to "do all of the job duties fluently without additional instructions" after "at least about a day or two." (AR 59.) The longest training he had was about two or three weeks to "do safety for our bomb threats and stuff, safety procedures." (AR 60.)

Plaintiff testified that during a typical day, he played video games on his tablet or on the internet. (AR 54-55.) Plaintiff testified he was able to wash dishes, shop for groceries, perform "light" cooking, and watch television and movies. (AR 50; 54-55.) Plaintiff has a driver's license but does not drive because he does not have a car. (AR 44-45.)

### b.   Vocation Expert Testimony at Hearing[4]

The Vocational Expert ("VE") testified that Plaintiff had past relevant work as a security guard, DOT 372.667-034, light work with an SVP[5] of 3. The ALJ asked the VE to consider a hypothetical individual of Plaintiff's age, education, and past work experience, capable of performing medium work except that he could only frequently push and pull; cannot climb ladders, ropes, and scaffolds; can frequently balance but only occasionally perform other postural maneuvers; cannot work around hazards; and, is limited to simple, routine tasks. (AR 62-63.) The VE testified that such an individual could not perform Plaintiff's past relevant work due to the limitation to simple, routine tasks, but could perform the requirements of other work including counter-supply worker, DOT 319.687-010, floor waxer, DOT 381.687-034, and day worker, DOT 301.687-034, all medium work with an SVP of 2. (AR 63.)

The ALJ then asked the VE to assume a hypothetical individual with the same limitations as the first hypothetical but capable of performing only light work. (AR 64.) The VE testified

---

[4] The VE testified that his testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (AR 65.)

[5] Specific Vocational Preparation ("SVP"), as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.

5

such an individual could perform the requirements of advertising material distributor, DOT 230.687-010, housekeeping cleaner, DOT 323.687-014, and parking lot signaler, DOT 915.667-014, all light work with an SVP of 2.  (AR 64.)  The ALJ then asked the VE to assume an individual with the same limitations as the first hypothetical but capable of performing only sedentary work.  (AR 64.)  The VE testified such an individual could perform the requirements of microfilming document preparer, DOT 249.587-018, escort vehicle driver, DOT 919.663-022, and street addresser, DOT 209.587-010, all sedentary work with an SVP of 2.  (AR 65.)

The ALJ then asked the VE to assume the same individual as in hypothetical number three, with the additional limitation to only standing and walking at 15-minute increments, sitting at 25-minute increments, and requiring frequent breaks four or five times a day, each lasting about ten minutes.  (AR 65.)  The VE testified that such an individual could not work.  (AR 65.)

The VE testified that the typical training requirements for an SVP 3 position would go from "30 days to three months."  (AR 65.)  Plaintiff's counsel asked the VE whether, based on Plaintiff's testimony that the longest period of training he undertook as a security guard only lasted between two to three weeks, it was possible that as actually performed, Plaintiff's past relevant work was performed at an SVP level lower than 3.  (AR 65-66.)  The VE testified that the SVP of 3 was based on training required to get a job as a security guard, not on-the-job training.  (AR 66.)

C. **Administrative Proceedings**

On April 15, 2013, an ALJ issued a decision finding Plaintiff had the severe impairment of borderline intellectual functioning but did not meet or medically equal a listed impairment, retained the residual functional capacity ("RFC") to understand, remember, and carry out at least one- and two-step instructions, interact appropriately with others in work-like settings, and adapt to change in the workplace, and retained the capacity to perform his past relevant work as a security guard.  (AR 69-75.)

On September 10, 2013, the ALJ issued a written decision finding that Plaintiff had severe impairments of obesity, plantar fasciitis, mild osteophyte formation within the anterior endplate of L4 and L5, borderline intellectual functioning, and adjustment disorder.  (AR 21.)  The ALJ

determined that these impairments did not meet or equal a listed impairment. (AR 22.) The ALJ found Plaintiff retained the RFC to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he can lift 50 pounds occasionally and 25 pounds frequently; can sit, stand, and/or walk for six hours out of an eight-hour workday with regular breaks; can frequently push and pull; cannot climb ladders, ropes, or scaffolds; can frequently balance; can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; cannot work around hazards; and is limited to simple and routine tasks. (AR 24.)

After considering Plaintiff's age, limited education, work experience, and RFC, the ALJ determined Plaintiff could not perform the requirements of any past relevant work but that there were other jobs existing in significant numbers in the national economy Plaintiff could perform, including representative occupations counter supply worker, DOT 319.687-010, floor waxer, DOT 381.687-034, and day worker, DOT 301.687-034, all medium, unskilled work with an SVP of 2. (AR 30-31.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. (AR 31.)

The Appeals Council denied Plaintiff's request for review on March 10, 2015, making the ALJ's decision the Commissioner's final determination for purposes of judicial review. (AR 1-4.)

**D.    Plaintiff's Complaint**

On May 26, 2015, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. (Doc. 1.) Plaintiff contends that the ALJ erred by finding Plaintiff did not meet or equal Listing 12.05(C) at Step 3 of the sequential process. (Doc. 20.)

### III.   SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## IV.   APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3) (A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In Step 1, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, the ALJ must determine at Step 2 whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, the ALJ moves to Step 3 and determines whether the claimant has a severe impairment or combination of impairments that meet or equal the requirements of the Listing of Impairments ("Listing"), 20 § 404, Subpart P, App. 1, and is therefore presumptively disabled. *Id.* §§ 404.1520(d), 416.920(d). If not, at Step 4 the ALJ must

determine whether the claimant has sufficient RFC despite the impairment or various limitations to perform her past work. *Id.* §§ 404.1520(f), 416.920(f). If not, at Step 5, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## V.  DISCUSSION

Plaintiff contends the ALJ erred by finding Plaintiff did not meet or equal Listing 12.05(C) at Step 3 of the sequential process and by not further "develop[ing] the record with respect to [Plaintiff]'s mental impairment of intellectual disability." (Doc. 20.) The Commissioner contends the ALJ properly determined Plaintiff did not meet Listing 12.05(C) and properly developed the evidence of record. (Doc. 23.)

### A.  The ALJ's Had No Duty to Further Develop the Record

Plaintiff contends the ALJ "failed to sufficiently develop and analyze the record" because she failed to obtain "additional intellectual testing" once she found Plaintiff's November 2011 testing invalid. (Doc. 20, pp. 7; 10.) The Commissioner responds that the ALJ had no duty to supplement the record because the record was fully developed and unambiguous, and notes that Plaintiff identifies no legal authority to support his argument that the ALJ was required to obtain a second consultative examination because his "poor effort" and "non-credible manner" marred the first consultative examination. (Doc. 23, p. 14 (citing Doc. 20, p. 10).)

#### 1.  Legal Standard

"In Social Security cases, the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (citation omitted). "The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). "One of the means available to an ALJ to supplement an inadequate medical record is to order a consultative examination, *i.e.*, 'a physical or mental examination or test

purchased for a claimant at the Social Security Administration's request and expense.'" *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001) (quoting 20 C.F.R. §§ 404.1519, 416.919).

### 2. The ALJ's Consideration of the Sufficiency of the Record

Plaintiff contends the ALJ erred by failing to order an additional consultative mental examination after finding the scores from Plaintiff's November 2011 examination invalid due to Plaintiff's "poor effort" and "non-credible manner." (Doc. 20, p. 10; *see* AR 24.) Plaintiff refers the Court to a prior intellectual testing referenced in the April 2013 decision denying benefits. (Doc. 20, p. 10 (citing AR 73).) Plaintiff contends the ALJ "fail[ed] to probe further regarding the existing valid IQ score and/or seek additional testing due to the presence of substantial evidence of the requisite score[.]" (Doc. 20, p. 10 (citing *Thresher v. Astrue*, 283 Fed. App'x 473, 475, n.6 (9th Cir. 2008), for position that "[a]n ALJ should not find an IQ invalid without explaining evidence impacting the validity of the score").) Plaintiff's contentions lack merit.

As an initial matter, Plaintiff's argument lacks specificity and analysis. It is within the Court's discretion to reject this argument *ab initio*. *See Hibbs v. Dep't of Human Res.*, 273 F.3d 844, 872 (9th Cir. 2001) *aff'd sub nom. Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721 (2003) ("We therefore cannot grant relief [on this] argument, because [plaintiff] has failed to develop the record and his argument sufficiently to render it capable of assessment by this court"). The Court, however, is unwilling to so prejudice Plaintiff's right to redress in the court as to dismiss argument out of hand. The Court will therefore address Plaintiff's contention only to the extent that he has provided some reference and citation to the record. *See Indep. Towers of Washington v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our circuit has repeatedly admonished that we cannot manufacture arguments for an appellant and therefore we will not consider any claims that were not actually argued in appellant's opening brief") (internal quotations and citations omitted); *see also Aceves v. Colvin*, No. 1:14-CV-01907-SMS, 2016 WL 1267384, at *6 (E.D. Cal. Mar. 31, 2016).

To the extent that Plaintiff argues that the ALJ erred by relying on the opinion of the reviewing agency physician rather than ordering a further consultative examination, Drs. Michiel and Unger are *precisely* those types of psychological specialists whose opinions are required by

the statute. (AR 340-57.) Dr. Michiel's consultative opinion was fully credited as consistent with the record and Dr. Unger's reviewing opinion was granted "great weight" by the ALJ in reaching her disability determination (AR 23) -- contrary to Plaintiff's contention that there was a gap in the record requiring a further consultative mental examination. (Doc. 20, p. 10.) Moreover, the ALJ did not rely on the two reviewing physicians' opinions alone; rather, the ALJ based her disability determination on a synthesis of Plaintiff's complete medical record, testimony, and Plaintiff's mother's testimony. (*See* AR 22-30.) There was more than enough medical evidence with the record upon which the ALJ was able to properly base her disability determination.

Finally, Plaintiff's contention that the ALJ was obligated to order a further consultative examination to sufficiently evaluate Plaintiff's mental impairment and mental functional capacity (Doc. 20, p. 10) is contrary to law and unsupported by the record. Plaintiff does not cite to a single inconsistency, ambiguity, or insufficiency within the record that would actually trigger the ALJ's duty to supplement the record in any way (*see generally*, Doc. 20) -- because there are none. *See* 20 C.F.R. § 416.920b(b) (where the evidence is insufficient or inconsistent, contains an internal conflict, is ambiguous, or medical evidence is not based on medically acceptable clinical or laboratory diagnostic techniques, the Commissioner weighs the relevant evidence and attempts to determine whether a claimant is disabled based on the evidence she has). Plaintiff's medical record is well-developed and generally consistent: not a single treating or nontreating source opined Plaintiff was disabled by a mental impairment or diagnosed Plaintiff with mental retardation.[6] (*See* AR 313-15; 332-39; 340-57; 392; 395-97; 410; 427; 450.)

Between multiple consistent medical source opinions and the uncontested credibility findings, the existing evidence of record was sufficient for the ALJ to determine that Plaintiff was not disabled." *See* 20 C.F.R. §§ 416.945(e), 416.929(c). Plaintiff fails to point to a single inconsistency or ambiguity in the record; absence such evidence, the ALJ was under no duty

---

[6] To the extent Plaintiff seeks to raise for the first time on appeal the argument that the ALJ should have ordered a further consultative examination to re-evaluate a diagnosis on Axis II, the Court notes that a diagnosis for mental retardation is not necessary to meet the requirements of 12.05C. Listing 12.05 "relies instead on valid IQ scores in conjunction with other evidence to establish 'subaverage general intellectual functioning.'" *Taylor v. Astrue*, No. 1:09-cv-01219-SKO, 2011 WL 4055243, *19 (E.D. Cal. Sept. 12, 2011); *Huber v. Astrue*, No. CV 10-8043-PCT-DGT, 2010 WL 4684021, *2 (D. Az. Nov. 12, 2010).

11

whatsoever to supplement the record in any way pursuant to 20 C.F.R. § 416.917. *See Webb*, 433 F.3d at 687; *Reed*, 270 F. 3d at 841.

In sum, the ALJ did not err by basing his decision on a consistent, developed, and unambiguous record.

**B.     The ALJ Properly Determined Plaintiff Did Not Meet Listing 12.05C**

Plaintiff contends the ALJ erred by finding "no evidence" indicating Plaintiff's condition manifested prior to the age of 22, by failing to fully credit an old IQ score in place of an invalid IQ score, and by finding Plaintiff does not have a physical or other mental impairment imposing an additional and significant work-related limitation of function. (Doc. 20, pp. 8-11.) The Commissioner responds that the ALJ properly found Plaintiff did not meet Listing 12.05C because he did not have deficits in adaptive functioning that manifested during the developmental period. (Doc. 23, pp. 10-12.)

**1.     Legal Standard**

At the Third Step, the ALJ determines whether a claimant's impairment meets or equals an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The Listing of Impairments describes specific impairments of each of the major body systems "which are considered severe enough to permit a person from doing any gainful activity." *Id.* (citing 20 C.F.R. § 404.1525); *see also* 20 C.F.R. § 416.925. If a claimant meets or equals a listed impairment, he or she will be found disabled at this step without further inquiry. *Tackett*, 180 F.3d at 1099.

The claimant bears the burden of establishing that his or her impairment satisfies all the criteria of a particular listing. *Id*. "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, *no matter how severely*, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis added).

Listing 12.05C is satisfied where a claimant shows (1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid verbal IQ score of 60 to 70; and (3) a physical or other mental impairment imposing an additional and significant

work-related limitation. 20 C.F.R.pt 404, subpt. P, app. 1, § 12.05C; *see also Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013).

### 2. The ALJ's Consideration of Listing 12.05C

The ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals a Listing. (AR 22.) The ALJ specifically considered Listing 12.05, but determined Plaintiff did not have deficits in adaptive functioning that initially manifested during the developmental period, i.e. prior to age 22, because he had passed proficiency testing in reading, writing, and mathematics during high school. (AR 23.) The ALJ further determined that Plaintiff failed to meet the paragraph C criteria because he "does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." (AR 23-24.) The ALJ specifically rejected Plaintiff's November 2011 intellectual testing result of a verbal score of 61 because Plaintiff was not fully cooperative during the examination and found there was no evidence that Plaintiff's condition manifested before age 22. (AR 24.)

Listing 12.05C is satisfied where a claimant shows (1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid verbal IQ score of 60 to 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C; *see also Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013). Beyond a qualifying IQ score, which establishes "significant subaverage general intellectual functioning," a claimant must demonstrate deficiencies in adaptive functioning. When determining whether a claimant demonstrates deficits in adaptive functioning, courts consider a variety of factors, including a claimant's poor academic performance, participation in special education, and work history. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C.

Here, Plaintiff asserts the ALJ improperly concluded he did not meet or equal Listing 12.05C on the basis of an invalid IQ score and failure to recognize any of Plaintiff's medically determinable impairments as imposing an additional and significant work-related limitation of function. (Doc. 20, pp. 8-9; *see* AR 24.) Any error in the ALJ's conclusion as to these two prongs of the 12.05C criteria are, however, harmless because the record demonstrates the ALJ properly

13

concluded the paragraph C criteria were not met because "there is no evidence indicating [Plaintiff]'s condition manifested prior to the age of 22" (AR 24). *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 553 F.3d 1155, 1162 (9th Cir. 2008) (an error is harmless where there "remains substantial evidence supporting the ALJ's conclusions. . . and the error does not negate the validity of the ALJ's ultimate [ ] conclusion"). Here, the ALJ's conclusion that the requirements of Listing 12.05C were unmet is supported by substantial evidence within the record that Plaintiff does not have deficits in adaptive functioning manifested before age 22. *See, e.g., Martinez v. Colvin*, No. 1:14-cv-00578-SKO, 2015 WL 4662620, *6 (E.D. Cal. Aug. 5, 2015); *Christner v. Astrue*, 498 F.3d 790, 793 (9th Cir. 2007).

For purposes of establishing deficits in adaptive functioning before age 22, an IQ score obtained after age 22 may be evidence sufficient to apply a rebuttable presumption that the plaintiff's IQ deficits began before age 22. *See, e.g., Fatheree v. Colvin*, No. 1:13-cv-01577-SKO, 2015 WL 1201669 (E.D. Cal. Mar. 16, 2015); *Vieira v. Colvin*, No. 2:11-cv-02342-KJN, 2013 WL 1195287, *7 (E.D. Cal. Mar. 22, 2013) (collecting cases and applying rebuttable presumption). Deficits in adaptive functioning may also be shown circumstantially through evidence of attendance in special education classes, dropping out of high school prior to graduation, difficulties in reading, writing, or math, and low skilled work history. *See Taylor*, 2011 WL 4055243, *17; *Campbell v. Astrue*, 1:09-cv-00465-GSA, 2011 WL 444783, *17 (E.D. Cal. Feb. 8, 2011). *See also* Diagnostic and Statistical Manual of Mental Disorders IV ("DSM-IV-TR"), American Psychiatric Association (4th ed. 2000) at 19 (noting that deficits in adaptive functioning are shown by "significant limitations in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety").

Plaintiff points to his education records (*see* AR 286-87; 290 (Plaintiff's cumulative grade point average was 2.087 in middle school, and 1.444 in high school)) and testimony at the hearing (*see* AR 45 (testifying he attended special education classes)), to support a finding he was "significantly subaverage" adaptive functioning during the developmental period. (Doc. 20, pp. 8-9 (citing *Sorter v. Astrue*, 389 Fed. App'x 620, 622 (9th Cir. 2010).) The Commissioner contends

the ALJ pointed to sufficient evidence in her decision to demonstrate Plaintiff has no deficits of adaptive functioning, noting Plaintiff passed state proficiency testing in Math, Reading, and Writing (AR 286-88) and repeatedly testified that he was able to attend to his personal care, prepare meals, manage his finances, drive a car, shop, perform light household chores, play video games, watch television (*see* AR 25-26; 50; 54-55; 255-58; 314; 333). Plaintiff's mother also reported Plaintiff can attend to his personal care, prepare simple meals, perform laundry, clean his bedroom, drive a car, shop, manage his finances, and play video games on his cell phone and computer. (AR 26; 237-40.)

As the ALJ discussed in his decision, Plaintiff further denied any deficits in his activities of daily living to Dr. Portnoff (AR 333), performed temporary work when he was seventeen or eighteen, and worked as a security guard for ten to fifteen years before being terminated for "gossip against him" (AR 47-48). Plaintiff was able to perform "a lot of different job duties" as a security guard without issue, and was generally able to learn those job duties within a day or two. (AR 59-60; 248.) Taken together, the record documenting Plaintiff's work history and ability to engage in a wide range of daily activities supports the ALJ's finding that Plaintiff does *not* have deficits in adaptive functioning meeting the 12.05C Listing requirements. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(1) ("adaptive activities" include cleaning, shopping, cooking, taking public transportation, paying bills, and caring for grooming and hygiene). *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("the Commissioner's findings are upheld if supported by inferences reasonably drawn from the record").

To "meet" a listed impairment, a disability claimant must establish that his condition satisfies *every* element of the listed impairment in question. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). To "equal" a listed impairment, a claimant "must establish symptoms, signs, and laboratory findings" at least equal in severity and duration to *each* element of the most similar listed impairment. *Tackett*, 180 F.3d at 1099-1100; *see also Zebley*, 493 U.S. at 531-33 (a claimant must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment, and cannot allege that "the *overall* functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment"). Because the evidence

demonstrates Plaintiff does not have deficits in adaptive functioning meeting the 12.05C Listing requirements, the ALJ properly concluded Plaintiff does not "meet or equal" the Listing.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C; DSM-IV-TR at 49.

In sum, the ALJ did not err in finding that Plaintiff did not meet or equal Listing 12.05C.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole.  Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Michael Phillip Esparza.

IT IS SO ORDERED.

Dated:   **July 18, 2016**                              /s/ *Sheila K. Oberto*
                                                      UNITED STATES MAGISTRATE JUDGE